# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**WESLEY MONROE #499102**          **CASE NO. 6:18-CV-00530 SEC P**

**VERSUS**                                     **JUDGE ROBERT R. SUMMERHAYS**

**DARREL VANNOY**                    **MAGISTRATE JUDGE WHITEHURST**

## REPORT AND RECOMMENDATION

Pro se petitioner Wesley Monroe, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on April 17, 2018. Petitioner attacks his 2012 conviction for armed robbery and second-degree kidnapping and the life sentence imposed thereon by the Fifteenth Judicial District Court, Lafayette Parish. This matter has been referred to the undersigned for review, report, and recommendation, in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE**.

### *Factual Background*

The Louisiana Third Circuit Court of Appeal set forth the facts at issue in this matter:

> On October 13, 2010, at around 10:00 to 11:00 p.m., the victim was in the parking lot of the Teche Federal Bank in Lafayette, Louisiana. He got out of his vehicle, left the door open, and turned around to get

1

his wallet and keys. Two African-American men came up behind him, and one said to him: 'give me what you got' and pointed a gun at his face.

The men forced the victim into the passenger seat of his truck. One of the men got in the back seat, and the gunman got in the driver's seat. The gunman then handed the gun to the other man, who held it to the victim's head 'the whole way, the whole drive.' One of the men told the victim that "if [he] ran, he'd pop a cap in [his] ass." The men took the victim's wallet (which according to the victim, contained a debit card and seven dollars), phone, and iPod.

The men took the victim to a Chase Bank ATM where they threatened the victim and forced him to give them his PIN number. The victim had only eighty-nine cents in his account. The men rode around in the victim's truck and finally dropped the victim off on the south side of Interstate 10. The victim believed that he 'was going to get shot and dumped.'

After the men let the victim out of the truck, he began walking westbound on the interstate and flagged down a passing officer within ten minutes. Police found the victim's truck a few minutes later.

Detective David Leblanc of the Lafayette Police Department showed two photographic lineups to the victim. The victim immediately recognized the driver, who originally had the gun, from Picture Number 2 in the first lineup. He did not recognize any of the photographs from the second lineup. Detective Leblanc showed the victim a third lineup, and the victim chose photographs of two men who possibly looked familiar to him. He identified those two photographs as possibly the man in the back seat, who held the gun to his head throughout the ride. He identified Defendant as the driver of the truck at trial. The victim said that Defendant wore a gray, white, and black hoodie and black pants or jeans at the time of the robbery.

Officer Nathan Thornton, III of the Lafayette Police Department answered a dispatch concerning an individual on Interstate 10 on October 13, 2010, and was then flagged down by the victim on the

interstate. Officer Thornton took information from the victim and issued a "be on lookout" (BOLO) alert for the truck. Approximately thirty minutes later, Officer Chase Guidry located the vehicle on West Willow Street. Soon after Officer Guidry received the BOLO, he saw the vehicle at an ATM at the Section 705 Credit Union. Forty dollars was withdrawn from the victim's account there. Officer Guidry followed the vehicle and called for more units. A suspect left the vehicle at Debaillon Park and fled on foot. A short time later, Canine Officer Ryan Judice found a jacket on the ground that Officer Guidry identified as worn by the suspect. The man was not apprehended.

\*\*\*

After the victim's photo lineup identification, police issued an arrest warrant for Defendant. Investigation developed Jermaine Ason as an additional suspect. Ason's statements about what happened were consistent with what the victim said.

*Monroe*, 13-717 (La. App. 3. Cir. 02/12/14), 131 So.3d 1134.

### *Procedural Background*

Wesley James Monroe was charged with second degree kidnapping, a violation of La.R.S. 14:44.1, and armed robbery, a violation of La.R.S. 14:64, on April 5, 2011.  On or about September 12, 2012, a jury found him guilty on both counts. The trial court sentenced him to forty years without benefit of probation, parole, or suspension of sentence on the second degree kidnapping conviction and to ninety-nine years without benefit of probation, parole, or suspension of sentence on the armed robbery conviction. These sentences were vacated when petitioner was adjudicated a habitual offender.  He was sentenced as a multiple offender to two

concurrent life sentences at hard labor without benefit of parole, probation, or suspension of sentence.

Pursuant to *Anders v. California*, 386 U.S. 738 (1967), petitioner's appellate counsel filed a brief stating that he could find no errors on appeal that would support reversal of petitioner's adjudication or sentences. Thus, he sought to withdraw. On February 12, 2014, the Third Circuit affirmed petitioner's sentence and conviction. *State v. Monroe*, 2013-754 (La. App. 3 Cir. 2/12/14), 2014 WL 576251. Petitioner applied for writs of certiorari in the Louisiana Supreme Court, and on October 3, 2014, his writ application was denied. *State v. Monroe*, 2014-KO-0517 (La. 10/3/14), 149 So.3d 7949. He did not apply for certiorari in the United States Supreme Court. [Rec. Doc. 1, p.2, ¶9(h)]

Petitioner filed an application for post-conviction relief in the trial court on October 26, 2015, which was denied. According to the petition before this Court, the following issues were raised: (1) trial counsel was ineffective for failing to investigate/failing to use petitioner's phone records to show he was two miles away from the crime when it occurred and for failing to reiterate his motion to recuse the trial judge; (2) trial counsel was operating under a conflict of interest due to his work with co-defendant's counsel to convince co-defendant to accept a plea agreement; (3) insufficient evidence; (4) trial court abused its discretion in allowing the jury to view evidence in the jury room; and (5) the provision of the Louisiana

Constitution allowing non-unanimous jury verdicts violates the Equal Protection Clause of the Fourteenth Amendment. He filed a writ application in the Third Circuit Court of Appeal, under Docket Number KH-16-0183, on March 10, 2016 [Rec. Doc. 6-1, pp. 85-130], which was denied on July 13, 2016 [Rec. Doc. 6-1, pp. 132-33]. On August 12, 2016, he filed an application for supervisory and/or remedial writs in the Louisiana Supreme Court, which was denied on November 17, 2017. *State ex rel. Monroe v. State*, 16-KH-01615 (La. 11/17/17), 228 So.3d 1208; *see also* Rec. Doc. 6-1, pp. 160-62. His subsequent Motion for Reconsideration was denied on February 9, 2018. *State ex rel. Monroe v. State*, 16-KH-01615 (La. 2/9/18), 236 So.3d 1258; *see also* Rec. Doc. 6-1, p. 184.

Petitioner filed the instant petition on April 17, 2018, raising the following claims: (1) trial counsel was ineffective for failing to investigate/failing to use petitioner's phone records to show he was two miles away from the crime when it occurred and for failing to reiterate his motion to recuse the trial judge; (2) trial counsel was operating under a conflict of interest due to his work with co-defendant's counsel to convince co-defendant to accept a plea agreement; (3) insufficient evidence; (4) trial court abused its discretion in allowing the jury to view evidence in the jury room; and (5) the provision of the Louisiana Constitution allowing non-unanimous jury verdicts violates the Equal Protection Clause of the Fourteenth Amendment.

5

*Law and Analysis*

## I.    Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28

U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court

may consider habeas claims. After the state courts have "adjudicated the merits" of

an inmate's complaints, federal review "is limited to the record that was before the

state court[.]"  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must

show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court

arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a

question of law or if the state court decides a case differently than [the Supreme

Court] has on a set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230

F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).

"The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the

6

Supreme Court's] decisions as of the time of the relevant state court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from... [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II.    Claims

### A.  Ineffective Assistance of Counsel

Petitioner argues that he had ineffective assistance of counsel due to his trial counsel's failure to introduce his cellular telephone records and failure to reiterate a motion to recuse the trial judge.  Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993), citing *Strickland*, 466 U.S. at 691.  A determination

of whether an investigation is reasonably adequate depends upon a variety of factors, including the number of issues in the case, the relative complexity of those issues, the strength of the Government's case, and the overall strategy of trial counsel. *Baldwin v. Maggio*, 704 F.2d 1325, 1333 (5th Cir. 1983), *cert. den.*, 467 U.S. 1220 (1984). However, bare allegations do not suffice. A defendant or petitioner who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Nelson*, 989 F.2d at 850 (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Under *Strickland*, even where trial counsel has failed to adequately investigate a case, a defendant must demonstrate that he has been prejudiced by his counsel's failure. *See Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir.1986), cert. den., 479 U.S. 1030 (1987). To show prejudice, the petitioner must prove that an alleged breach of his attorney's duty to investigate resulted in an actual and substantial disadvantage to the course of his defense. *Baldwin*, 704 F.2d at 1333.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. *Dowthitt v. Johnson*, 230 F.3d 733 (5th Cir. 2000), cert. den., 532 U.S. 915 (2001), citing *Strickland*, 466 U.S. at 689. Thus, the court's scrutiny of counsel's performance is highly deferential. The court must be

particularly wary of arguments that essentially come down to a matter of degrees, i.e., did counsel investigate enough or did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing. *Dowthitt*, citing *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir.1999).

In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof. *U.S. v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999) (citing *Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994), cert. den., 513 U.S. 966 (1994)).

### 1.  *Failing to Introduce Cellular Telephone Records*

Monroe argues that in 2013, he obtained his cellular telephone records from an attorney handling a different matter for him and that these records established that he was more than two miles away from the crime scene and, therefore, could not have committed the crime.  He asserts that his trial counsel, Randal McCann, was ineffective for failing to use this "critical and readily available evidence" at his trial and that if he would have used his cell phone records, the outcome would have been different.  [Rec. Doc. 1-2, pp. 15-16]

The trial court, denying Petitioner's application for post-conviction relief on this issue, noted that while the records show that his cell phone was two miles away from the crime scene, they do not demonstrate his precise location at the time of the offense; the records only reflect a point on the map where the cellular signal was

located.  *See* Trial Court's Ruling on Post-Conviction, Rec. Doc. 20-7, p. 25.  The Court noted that Monroe did not reference any expert opinion that interprets the telephone records, or offer any expert opinion supporting his argument.  *Id*. Moreover, he did not show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  In this instance, the state court applied the appropriate legal standard for ineffective assistance of counsel claims.   It's conclusion that counsel's strategic choice was appropriate under the circumstances has not been shown to be an unreasonable application of the law and therefore, Petitioner cannot prevail on this claim.

### 2. *Failing to Reiterate Motion to Recuse Trial Judge*

Next, Petitioner argues that trial counsel was ineffective because he did not re-urge a motion to recuse the trial judge based upon the judge's acquaintance with members of the victim's family.  During a pre-trial hearing, Judge Patrick Michot called for a sidebar and advised counsel that he recognized the victim's father, who was in the courtroom, as the father of a former friend of his son.  He advised that his son was the same general age as the victim, Nicholas Babineaux, and was in cub scouts with him as a child and the two boys spent time at each other's homes with family members.  As a result of this disclosure, Petitioner's counsel filed a Motion to Recuse Judge Michot.  [Rec. Doc. 20-3, pp. 45-46]

10

A hearing on the motion was held before Judge Jules Edwards during which Judge Michot testified that the victim had a friendly relationship with his son when they were in the cub scouts together 10-12 years earlier. *See* Transcript of Hearing on Motion to Recuse, Rec. Doc. 20-3, pp. 78- 95. He recounted memories of one father/son camping trip during which he and his son threw the football with the victim and his father, as well as another time when the victim came to his house to play with his son. *Id*. at pp. 83-84. He testified that he barely knew the parents and they never socialized together. *Id*. at p. 84. Judge Michot testified:

> Q:   And you don't think that the fact that you knew him as a friend of your son 10 years plus may, in fact, seep into your analytical process when dealing with Mr. Monroe?

> A:   Judge Michot:      No, I don't think so. It's just another young person that was allegedly an unfortunate victim of a crime. I mean, it wouldn't really make any difference whether I knew him or not.

> Q:   So what you're saying is that you have no prejudice or bias against Mr. Monroe, based upon the past relationship that the victim had with your family.

> A:   That's right. I mean, they've got to prove everything they've got to prove against him. And the burden is going to be the same, regardless of the situation.

*Id*. at p. 85.

The victim's father also testified at the hearing that he remembered that his son was in the cub scouts with Judge Michot's son and that his son had gone to the Michot home one time, that he could remember. *Id*. at p. 88. He testified that he

only knew Judge Michot as a public official and that their sons went to elementary school together and that they did not socialize. *Id.*

Judge Edwards denied the motion, holding that the evidence presented was not sufficient to convince him that this was a case in which the judge would be biased, prejudice, or personally interested in the cause to the extent that he would be unable to conduct a fair and impartial trial. *Id.* at p. 94.

The State points out that Judge Michot later, during the course of the trial, after the victim testified and the jury left the courtroom, stated for the record:

> I just want to put something on the record. When Ms. Billeaud told me she was waiting for Nick to talk to him this morning - he wasn't there yet. It was around 8:15, and someone told me that Nick's dad was in the building. And when I was coming into the courtroom I saw Nick's dad, and I saw this guy sitting next to him. And I said, 'Well, we're going to court. They told me everybody's here. I wonder where Nick is.' So then I come into the courtroom and I don't see Nick. I said, 'Well, I wonder - maybe he's upstairs.' Then you call the witness, and I saw this guy coming in here and he stands right there five (5) feet away from me and looks right at me and he swears in. I said "Well, I guess that's him." But I absolutely did not recognize him. I remember his complexion being darker, like his dad's and, of course, his hair, totally -and his hair was straight like his dad's and now its in dreadlocks. In listening to him talk and looking at him and his complexion, I would have never recognized this boy. I guess it's just been that long since I've seen him but I wanted -since that issue had come up –

*See* Trial Transcript, Rec. Doc. 20-4, p. 143.

Petitioner argues that his counsel was ineffective for re-urging the Motion to Recuse at this time, in light of the judge acknowledging that he did, in fact, remember the victim in this case. The State argues, and this Court agrees, that this statement makes it clear that Judge Michot **did not** recognize the victim. He wanted to make it clear, on the record, that this victim was a complete stranger to him now and the fact that he knew him when he was a young boy would in no way influence the court in the matter before it at that time.

The trial court, in addressing this issue raised in Petitioner's application for post-conviction relief, relied upon the record which reflects that after the hearing was held, the Motion to Recuse was denied and found that it did not reflect the existence of any additional grounds for recusal, or any grounds to re-urge a motion to recuse.

This Court finds that Petitioner has not shown that his counsel's failure to re-urge the once denied Motion to Recuse so prejudiced the defendant that it deprived him of a fair trial. Accordingly, Petitioner cannot prevail on this claim.

## B. Trial Counsel's Conflict of Interest

Next, Petitioner contends that his trial counsel had a conflict of interest. On the morning of the first day of trial, the following exchange occurred between the trial court and defense counsel:

13

| Mr. McCann: | Basically, Valex and I swapped some services yesterday. I helped him talk his client into taking a plea. |
| Court: | Okay |
| Mr. McCann: | And he is actually doing the same thing right now for mine. It's going to be a five minute conversation. |
| Court: | That's fine. That'll work out pretty good with the jury not being quite here yet. |
| Mr. McCann: | Yes, sir. |
| Court: | Do you want to put those things on the record right now, or do you need your client here for that? |
| Mr. McCann: | No. |
| Court: | Okay. All right. Y'all go ahead. |

[Rec. Doc. , p. 112]

Counsel then proceeded to discuss, on the record, issues concerning the use of other crimes evidence. *Id*.

Petitioner contends that the dialogue between the Court and his counsel evidences a conflict of interest, reasoning that that if his attorney helped secure Petitioner's co-defendant's plea, and the co-defendant then testified against Petitioner, Mr. McCann's actions were adverse to Petitioner.

The trial court, denying relief on this claim, noted that the transcript of the trial upon which Petitioner relies does not provide any evidence that his counsel, Mr.

14

McCann, spoke with the co-defendant, Mr. Ason.    Instead, it relies only on the supposition that "the client" that Mr. McCann spoke with was Monroe's co-defendant.    The trial court relied upon Mr. McCann's affidavit, attached to the State's response to the Application for Post-Conviction relief, in which he states that he never spoke to Jermain Ason for the purpose of providing legal counsel and that he never assisted with any plea negotiations regarding Ason's case.    Moreover, in the affidavit of Mr. Valex Amos, defense counsel for Ason, also attached to the State's response, Amos states that Mr. McCann never spoke with Jermain Ason, nor did he assist with any plea negotiations.    [Rec. Doc. 20-6. P. 178]    The trial court concluded that Monroe had not demonstrated that his counsel had actually spoken with Mr. Ason, or that he ever assisted Mr. Ason in connection with any plea negotiations.    The court found that, as Petitioner had not demonstrated that his defense counsel had any conflict of interest in his representation, this claim was denied.

The State, in response to the instant petition, also notes that Mr. Amos is a public defender assigned to Track Four within the District Court in Lafayette Parish, which is the same Track to which Petitioner's case was assigned.    On any given day, he has multiple cases set on the docket in that Track.    This Court agrees that it is likely that Mr. McCann assisted Mr. Amos with another client he had on his docket (completely unrelated to Petitioner and Mr. Ason) and Mr. Amos was returning the

same favor to Mr. McCann.  Notably, Mr. Amos did have another client plea on September 10, 2012, the day before the first day of Petitioner's trial.

For the reasons stated, this Court finds there was no error in the trial court's findings, and as such, federal habeas relief is not warranted with respect to this claim.

## C. Insufficient Evidence

Next, Petitioner argues that there was insufficient evidence for a conviction and that he was denied effective assistance of appellate counsel for counsel's failure to assign error on appeal.  Following Petitioner's conviction, his trial counsel filed, in the Third Circuit Court of Appeal, a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), alleging that no non-frivolous issues exist on which to base an appeal and seeking to withdraw as counsel.  *State v. Monroe*, 13-717 (La. App. 3 Cir. 02/12/14), 131 So.3d 1134.  The Third Circuit, citing to *State v. Benjamin*, 573 So.2d 528, 531 (La. App. 4 Cir. 1990), explained an *Anders* analysis as follows:

> When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, *Anders* requires that counsel move to withdraw. This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf. This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review  of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal. Under C.Cr.P. art. 914.1(D)

16

> this Court will order that the appeal record be supplemented with pleadings, minute entries and transcripts when the record filed in this Court is not sufficient to perform this review.

*Id*. at *9.

Pursuant to *Anders* and *Benjamin*, the Third Circuit performed a thorough review of the record, including pleadings, minute entries, the charging instrument, and the transcripts and has confirmed the statements by counsel.  It found that Petitioner was properly charged in his bill of information, he was present and represented by counsel at all crucial stages of the proceedings, that the jury composition and verdict were correct, his sentences complied with the statutory sentencing range, and their review of the transcripts in the record revealed that there were no non-frivolous issues for appeal.  *Id.*

*Jackson v. Virginia*, 443 U.S. 307 (1979), provides the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence. Under *Jackson*, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  *Id.* at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).  Thus, to determine whether the commission of a crime is adequately supported by the record, the Court must review the substantive elements of the crime

as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n. 16).

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); see *Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether

the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. *Hankton v. Boutte*, Civil Action No. 17-11362, 2018 U.S. Dist. LEXIS 126899 at *15 (E.D. La. June 29, 2018)(citing *Perez*, 529 F.3d at 594).  Therefore, this Court must examine whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The State argues, and this Court agrees, that there was ample evidence to convict Petitioner of armed robbery and second-degree kidnapping.  First, the record reflects that the victim, Nicholas Babineaux, identified Petitioner as the person who approached him with a gun, threatened to shoot him if he didn't cooperate, forced him into his vehicle, drove him to an ATM machine and demanded his PIN number to access his bank account.  [Rec. Doc. 20-4, pp. 109-142.]  He testified that he was "positive" of Petitioner's identity when he chose him out a photographic line-up.  *Id.* at 142.    The jury found the victim's testimony credible and chose to believe his testimony, which set forth the elements of armed robbery and second-degree kidnapping.

Moreover, there is a photograph from the Section 705 Credit Union, where $40 was withdrawn from the victim's account, which depicts the driver of the

victim's vehicle wearing a gray jacket with a stripe down the side.  [Rec. Doc. 20-4, p. 185]  That jacket, found directly along the path taken by the driver of the vehicle when he ran from the police, a short distance from where Petitioner lived, was swabbed for DNA.  Id at pp. 150-167.  Bethany Harris, a DNA analyst with the Acadiana Criminalistics Laboratory, testified that the back of the neck and both wrist cuffs of this jacket were swabbed, and the Petitioner's DNA profile matched that of the DNA profile found on the jacket in several locations.  Accordingly, Petitioner could not be excluded from being a contributor of the DNA.  Harris testified at length as to the testing process and what it means when someone cannot be excluded from the profile.  *Id*. at pp. 213-233.

In addition, Jermaine Ason, the co-defendant, testified that he committed the robbery and kidnapping along with the Petitioner.  His testimony regarding the incident was consistent with that of the victim.  *Id*. at pp. 239-255.

Viewing the evidence in the light most favorable to the prosecution, the undersigned finds that there was more than sufficient evidence upon which a rational trier of fact could have found that the essential elements of armed robbery and second-degree kidnapping were proven beyond a reasonable doubt.  Petitioner's argument is essentially that the jury should not have believed the testimony and evidence that established his identity as the perpetrator.  As discussed above, this court, in reviewing a sufficiency of the evidence claim in a habeas corpus petition,

does not review the credibility of witnesses or the factfinder's determination of the weight to be given to evidence. Such determinations are the exclusive province of the jury.

Because the state courts' rejection of Monroe's insufficient evidence claim does not represent an unreasonable application of Supreme Court law to the facts of this case, this claim should be found to be without merit, not warranting federal habeas relief. Moreover, as the state courts have determined that a claim of insufficient evidence would be a frivolous claim, based on the evidence presented at trial, Petitioner's allegation that counsel was ineffective for failing to raise same is without merit.

### D. Abuse of Discretion by Trial Court in Allowing Jury to View Evidence

In claim four, Petitioner argues that his conviction should be vacated because the jury was allowed to see evidence which "had not been entered into evidence" during their deliberations, in violation of Louisiana Code of Criminal Procedure article 793. [Rec. Doc. 1-2, p. 31]

The state court, addressing this issue on post-conviction, relied on the minutes and transcript of the trial, which clearly state that on September 12, 2012, at 6:14 p.m., "the Jury sent out a written request to review all evidence with the exception of the proffered exhibits. Upon meeting with the State and Defense, outside the presence of the Jury, the court allows said request." *See* Minutes Report, Rec. Doc.

20-6, pp. 168-69. The exhibits reviewed by the jury, which had previously been entered into evidence, without objection from Petitioner's counsel, were all photographs, written Advice of Rights form, resume and CV of expert Bethany Harris, evidence envelopes containing photographic line-up, a jacket and ACL chart. *Id*. No written evidence or testimony was reviewed.

Importantly, Petitioner's counsel waived any objection to having the jury view the evidence because he believed it was beneficial to his position:

> Mr. McCann:    When the jury came in and asked when the jury asked a question about seeing the evidence, its perhaps the statute that they're not really supposed to see the written – the documentation evidence, but the documentation evidence was something that I thought was beneficial to my position, I waived the objection to them having to see all of the evidence. And I did it hoping it was going to turn out to be in my favor.
>
> The Court:    Okay. I was aware of that statute too, but since the parties had agreed to it and there was no opposition, I didn't see any problem with it as well.
>
> Mr. McCann:    And I do not change my position. I still would have made the same decision.

Rec. Doc. 20-5, pp. 51-52.

Petitioner mistakenly lists transcripts of his and his co-defendant's statement as items submitted to the jury. These items were never introduced to the jury. He also lists the victim's written statement; however, while the Court allowed the State to proffer this exhibit, it was not one that the jury reviewed.

Louisiana law provides that jurors generally are not permitted to have access to "written evidence;" however, objects and documents in evidence generally may be sent to the jury room during deliberations when a physical examination of that evidence is required to enable the jury to arrive at a verdict. La.C.Cr.P. art. 793; *State v. Pooler*, 696 So.2d 22, 52-53 (La. App. 1st Cir. 1997).

Louisiana C. Cr. P. art. 793(A) provides:

> A. A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.

Under the plain language of La. C.Cr.P. art. 793, the primarily photographic and demonstrative exhibits are neither written evidence nor testimony. *See State v. Wright*, 40,945 (La. App. 2 Cir. 05/19/16), 931 So.2d 432, 449 (*citing State v. Brooks*, 2001-0785 (La. 01/14/03), 838 So.2d 725). The Second Circuit in *Wright* held that "subject to the explicit restrictions imposed by that statute, a trial judge has sound discretion in permitting the jury's review of properly-admitted evidentiary exhibits during its deliberations, including audiotapes and videotapes. *Id*. For the same reason, this Court finds no error in the trial court allowing the jurors to review the properly-admitted photographic and demonstrative exhibits at issue.

23

Evidentiary errors of state law are generally not cognizable in federal habeas review, unless the errors were so prejudicial as to result in a denial of a constitutionally fair proceeding. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999). The instant claim is without merit because Petitioner cannot even demonstrate that the trial court violated a state law in allowing the jury to view the exhibits. For the reasons stated, this Court finds there was no error in the trial court's findings, and as such, federal habeas relief is not warranted with respect to this claim.

### E. Non-Unanimous Jury Verdicts are Unconstitutional

Finally, Petitioner claims that non-unanimous jury verdicts are unconstitutional and that his conviction was by a unconstitutional verdict of ten to two. [Rec. Doc. 1-2, p. 36.] However, as the trial court noted, his claim is not supported by the facts of this case, as the record does not reflect that his conviction was reached by a non-unanimous verdict. The jury was not polled to determine whether the verdict was unanimous. [Rec. Doc. 20-5, p. 50] As there is no evidence that Petitioner wasn't convicted by a unanimous verdict, this claim is without merit. Accordingly, this Court finds there was no error in the trial court's findings, and as such, federal habeas relief is not warranted with respect to this claim.

### Conclusion and Recommendation

For the foregoing reasons,

24

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report

and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

      **THUS DONE** in Chambers on this 18th day of April, 2019.


                                   **CAROL B. WHITEHURST**
                                   **UNITED STATES MAGISTRATE JUDGE**